more for tomorrow morning and the one case for today is numbers 15-1975 and 1976 Suarez v. Attorney General Mr. Nemeroff and Mr. Gura. May it please the court Patrick Nemeroff on behalf of the government. Mr. Nemeroff did you argue my law firm told me, Heller? I did not I think my prison counsel. If I may I'd like to reserve four minutes for rebuttal. That's fine. Let me just give you, when Heller described the ban on felons possessing firearms as quote presumptively lawful and that means there's a presumption but a presumption can be overcome can it not. That's right the Supreme Court indicated in Barton it held that it rejected an as-applied challenge to section 922 g1 but it didn't foreclose the possibility of a successful as-applied challenge in the future but what the court said was that such a plaintiff would first have to distinguish themselves from the population that has historically been excluded from exercise of the Second Amendment right and now as your honor indicated in Heller the Supreme Court did say that the constitution of this court in Marzarella explained that such a long-standing limitation. So how does Mr. Suarez distinguish himself? It's exactly my question. So what he would have to do so individuals are subject to categorical exclusion from the right to bear arms as a civic right just like the right to vote or the right to serve on a jury and one of the ways in which individuals can be excluded is by committing a serious crime and that's been the case historically so in order to distinguish himself from that population he would have to show that he wasn't that he was convicted of a minor crime and that's what this court indicated in Barton but the plaintiff can't make that showing here because he was convicted. It's a felony under federal definition. I mean it's a state misdemeanor here. Greater than two years. But it was punishable by more than a year obviously. More than two years for a state misdemeanor. So it was well more than a year. That's right. So he's a quote felon under federal definition. So are you saying that everybody in that category is categorically banned and there's no such thing as an as-applied challenge for that group of people? Well it might be this court left open the possibility and there might be someone who can point to a crime where only one state has subjected to such a significant penalty. It's an outlier state. It's not a penalty just over that two year line. But none of that has anything to do with the individual characteristics of the petitioner. So you're saying, I read your brief as saying in essence there's no as-applied challenge here. That's not our position your honor. We read Barton and we understand it to allow for the possibility of an as-applied challenge. But then we must look at the individual characteristics of the person bringing the as-applied challenge. What's your body of work? How old are you? How do you behave? Do you have a government security clearance? Et cetera, et cetera. So are all those the nitty gritty details that must be examined by the trial court in order to determine whether the law as applied to that particular individual is unconstitutional? I don't think so your honor. And there are two reasons why that isn't the test and shouldn't be the test. The first is that historically, as we've indicated, the right to bear arms has been subject to categorical exclusion just like the right to vote. And it hasn't been the case that there have been these individualized determinations to restore that right. Just like in the case of the right to vote, the plaintiff can't point to individualized determinations by courts that, well, this individual has proven based on various factors that they're sufficiently unlawful. Right. What that just proves is there's no as-applied challenge on a right to vote. No. In fact, courts have recognized as-applied challenges in certain contexts. For example, we said in our brief an equal protection challenge saying that the felon disenfranchisement law there was based on racial animus. So there still can be as-applied challenges, but there's no precedent for and there's no really call for the court to engage in that sort of ad hoc individualized determination. And this court in Poterelli, because there's no historical precedent for it, because I'm lost. If you're saying there can be an as-applied challenge, what facts would you conceive of that would make for a successful as-applied challenge? Well, the most important fact is always going to be the crime for which the individual was convicted. So you could imagine an as-applied challenge where a plaintiff says, for this crime, individuals convicted of this crime retain their Second Amendment right and it's unreasonable for Congress to prohibit them from possessing firearms. But that has nothing to do with the person that commits the crime and everything to do with the crime. Well, the person was the individual convicted of the crime. So, of course, the characteristics of that crime are the most pertinent aspects to the individual's challenge. And just to return, I mean, a number of courts have recognized that whether you're a minor or you have status as an illegal immigrant or, you know, you're a habitual drug user, those categories of individuals can be prohibited from possessing firearms. Now, if someone were to bring an as-applied challenge and identify a meaningful category of individuals as to whom that law was unreasonable, then we imagine that might be the sort of instance that this court in Barton was talking about. But this court was very clear in Ponerelli that it determined that courts were not institutionally equipped to make the sort of individualized, ad hoc, harmlessness determinations that the plaintiff is asking for in this case. But if you can... I'm lost. Just logically, if you can bring an as-applied challenge, if you can overcome the presumption, what are the types of facts that might exist here so that that presumption could be overcome theoretically? I think, as I indicated before, the sort of fact would be if an individual was convicted of a crime that only one state, for example, either criminalized or treated as significantly. If it was a crime that, you know, was unique. But here, what the individual was convicted of was unlawful possession of a firearm, which was subject to a sentence of three years in Maryland and is subject to a significant sentence in equal or even greater... If Maryland were the only state out of 50 that had, for a misdemeanor, up to three years, and all other states were a year, let's say, or less, would that make any difference to you? I think that would certainly make it a harder case for the government because there, what Congress has deferred to and what this court should look to is the legislative judgment about the seriousness of the crime. How many states out of 50 have, if you are carrying a firearm without a license, punishment up to or beyond, let's say, two years? How many states are beyond two years? I'm not sure. We say, at page 16 and 17 of our opening brief of footnote 5, we cite a number of the states that have punishments equivalent or greater. I know that there are a number of states that have punishments of five or even ten years. New Jersey is one of them, and of course, New Jersey's law was law upheld by this court in Drake. So this is a crime that is subject to a significant punishment. It's a law that is intended by states to protect the public's safety. It has a long tradition. So this is a significant crime. So let's assume that, again, it's presumptively all right to exclude a person who has been convicted of a misdemeanor with a punishable crime or sentence of greater than two years, in this case, three years, but if you think about it as applied challenge, don't you need to look at the type of crime, whether it was nonviolent? Don't you need to look at the amount of time that has passed since the crime was committed? And don't you need to look at the person's record during that interim period of time? Well, let me just first start with, in terms of looking at the type of crime, because we certainly agree you should look at the type of crime. I know those crimes, nonviolent, carrying. Well, that actually goes to one of our points, which is that it's very difficult to define what is a violent or nonviolent crime. As the Supreme Court held in Johnson v. United States, it held the On Career Criminal Act was unconstitutionally vague because it couldn't come up with a principled way to define a violent or nonviolent crime. What we know is that these sorts of laws are intended to protect the critical interest in public safety. That's what this court... Which is why they're lawful, and why this court so held in Barton. The law is fine, as a general proposition, but the harder question is, can anybody overcome the presumption of lawfulness of this? Right, and just going to the question about the seriousness of the crime for which this individual was convicted and whether or not it's violent, what I would say is, it certainly was a crime that implicated the public safety. I'm asking, was this crime, was this misdemeanor, a violent crime? Well, as I said, the Supreme Court itself said that there really isn't a principled way... But I'm asking you, just, you know, we're outside the courtroom, we're at a bar somewhere, is this crime a nonviolent crime? I may be. You may be there. I may be. If the Eagles lose, I'll really be. I really do want to resist trying to characterize it that way, but I would not call it a nonviolent crime. You have to say it's a violent crime, right? Well, the number of courts have upheld section 922G1, even as applied to individuals convicted of crimes that they characterized as nonviolent. So it's not the case that it's unconstitutional as applied to anyone convicted of a crime, even if the court characterizes it as nonviolent, particularly if it were a crime such as this. So now you're arguing that even one who's convicted of jaywalking and gets two nights in jail, that person is prohibited from having a firearm because nonviolent crimes are subject to this disability as well? No, Your Honor, there's a significant difference between something like jaywalking or shoplifting and an unlawful possession of a firearm. To Judge Ambrose's point, where's that line of demarcation between a violent crime and a nonviolent crime? Well, just to go to your question, I think courts have to wrestle with that. I don't think it's enough to say that's a very difficult question. The difference between jaywalking and unlawful possession of a firearm, the first place to look is that Maryland subjects unlawful possession of a firearm to a three-year term imprisonment. I'd be very surprised to learn that jaywalking was subject to any sort of punishment. Right, so that means this is a more serious crime than jaywalking, but it doesn't necessarily follow that this is a violent crime. In fact, what's violent about it, this is a having something you're not allowed to have crime, right? I said that I'm over my time, I'm at three minutes. Thank you. My sense, just speaking for myself, is it doesn't appear to be a violent crime, but I'd like you to tell me why I'm wrong if you think it is a violent crime. Well, I think unlawfully possessing a firearm, particularly a concealed and loaded firearm, and when you're arrested for driving while drunk, has serious implications for public safety. Now, whether you want to describe it as violent or not violent, it's certainly reckless, it certainly casts a problem in terms of public safety, and that's why the law exists. I'm with you on the problematic for public safety, but you haven't yet persuaded me why it's a quote violent crime. Because if the very same man in the very same situation could have pulled out a card, a firearms registration card, then he's not guilty of the crime, right? Let me get to, I think there's an underlying assumption here, which is that... I think yes, the answer is question. Well, my answer is that I think it is sufficiently violent given the nature of the crime and the nature of the law at issue, but... Let me step back for a minute. If he had produced a card, if he had a legal license, a registration card, then he's not convicted of this particular crime, correct? He might be convicted of the DUI, but not... Right, I'm not sure whether he would have been allowed to drive a vehicle with a gun. I'm not familiar enough with the details of the law, but... Well, he's not going to be... You may be right, Your Honor. Gun or no gun, if he's intoxicated, be over the limit, he's not going to be allowed to drive. That's right. At night. You're right, Your Honor. He didn't have a license, though, so he did violate this law, and I just want to get to... But that's a crime, and he should be punished for that. Right. But that begs the question of whether that's a violent crime. Well, if I can get to, I think, the underlying sort of the predicate assumption that underlies that question, which is that the crime needs to be violent in order to justify the prohibition, and in addition to the fact that other courts have upheld it as implied, the crimes that did non-violent. It's also, remember, the reason that civic rights, such as the right to bear arms or the right to vote, are subject to categorical exclusion is because it requires law-abiding, responsible citizens to exercise those rights, and it's not just because somebody might take a gun and commit a violent crime. If you're irresponsible with a gun, that can have significant consequences, and so Congress isn't just trying to stop future violent crimes. They're trying to stop anyone being injured by a firearm, and so it's not that the law would only be constitutional if the crime that underlied the prohibition was violent. If you've shown yourself to be willing to disregard the law, to violate a law that the legislature has deemed critical to public safety, then I think it's appropriate for Congress to... That sounds like the Plaxico Burris argument. He's in a bar or in a nightclub with a gun, without a license, and it goes off and shoots him, of all people. That's right. Certainly, if you're... That doesn't... Is that person presumptively violent? Well, as I said, the reasons for the prohibition go beyond just prohibiting violent crime. What is the point you're making? Would you please explain to me? The point I'm making is that if an individual has been convicted of a serious crime, they've historically been excluded from the right to bear arms and the right to vote. Obviously, the reason they've been excluded from the right to vote isn't out of a concern for violence. It's because that right, as a civic right, has been reserved for law-abiding, responsible citizens. The same is true for the right to possess arms. I'm happy to go on, or if I could have some time for rebuttal. No, we have four minutes for rebuttal. You can back up. There's no problem. I'm happy to answer other questions right now, though, if you have any. We'll get you back on rebuttal then. Okay. Thank you. Mr. Gura? Are you the one who argued, Heller? Yes, Your Honor, I did. May it please the Court, Alan Gura for the... I'm sorry, would you say your name more clearly? Sure. May it please the Court, Alan Gura for the appellee and cross-appellant, Julio Suarez. The Barton train has left the station a long time ago, and it did so with the government in its brief in Barton, blessing what became this Court's approach, which is to say that there is the prospect of people coming into court and proving that they do not qualify traditionally for disarmament in accordance with the Second Amendment right as we understand it in this country. Now, Barton states that to raise a successful as-applied challenge, an individual must present facts about himself and his background that distinguishes circumstances from those of persons historically barred from Second Amendment protections. That's it. Now, it's true that the severity of the underlying crime, which triggers a disability, is a factor in the Barton analysis, but the Barton analysis is more holistic. It's one of various factors. One would suppose that the more serious the underlying crime is, the more rehabilitation a person might need to show, and conversely, if the crime is relatively less serious, whatever it might be, then perhaps the Court need not be as concerned with the prospect of imminent violence. Barton had it, Judge Hardiman wrote it, but it says to raise a successful as-applied challenge, Barton must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections. For instance, a felon convicted of a minor non-violent crime might show that he is no more dangerous than a typical law-abiding citizen. So, what are the, what's the line, you're writing the opinion, what's the line between when you can overcome the challenge or presumptive presumption, and when you cannot? The line, I think, is also given earlier in Barton, and it goes to this analysis, and to quote Barton, further up the page. The issue is, I believe it's on page 173, where the Court states, to evaluate an as-applied challenge, we look to the historical pedigree of Section 922G to determine whether the traditional justifications underlying the statute support a finding of permanent disability in this case. That is, it's not necessarily a bright-line test where you go to see, well, it's two years and three months potential sentence, and, you know, 12 states have declared that it's a misdemeanor and 30 have declared it's a felony. Rather, you look to the traditional concern, which is, is this person dangerous? The two examples that follow the for-instance that Your Honor quoted are, number one, as Your Honor stated, that a felon is convicted of a minor non-violent crime that might show that he is no more dangerous than a typical law-abiding citizen. And then, of course, there's another example given right afterwards that talks about a felon whose crime of conviction is decades old, poses no continuing threat to society. So what we've seen, Barton, are at least three that I've just cited examples that speak to the idea that the inquiry here is targeted towards dangerousness. Is this person dangerous? And, in fact, the Barton inquiry echoes what Congress itself enacted when it enacted Section 922, because as part of the Gun Control Act, we have the defunct, unfortunately for now, but nonetheless still in the books, Section 925C, which directed the Attorney General with district court review to see whether the applicants, if somebody's applying for relief, the applicant's record and reputation are such that the applicant will not be likely to act in a manner dangerous to public safety, and that the granting of the relief would not be contrary to the public interest. That's Congress's language. So we see Congress and this Court in Barton, and just about every circuit court that's looked at this issue, at least accepted the idea that we're going to have as-applied challenges to 922, and that the inquiry, at the end of the day, is going to be dangerousness. And the question is, is this person dangerous today with firearms? Is there a risk that they will commit some kind of crime? If Suarez were convicted, not in 1990, but in June of 2015, for carrying a firearm without a license, isn't the presumption more difficult to overcome? Yes, it would be, because at that point, I mean, it's still up to the district court, and we're here to review the district court's decision. The district court would presumably say, perhaps this is a very recent event, and the district court might want to see a longer record of rehabilitation. It's a factor. It's not necessarily determinative. There isn't really one determinative factor that tells you yes or no, this person's covered or not covered by Barton. I want to address one point, though, that counsel raised, which is about this supposed hypothetical of a crime that's only triggering 922 in one state and not in the other 49. We actually have that situation. In one week from today, November 24th, the government owes me a response to the complaint in Baginski v. Lynch, which we cited in our brief. And what's Baginski about? Baginski is about a gentleman who has no criminal record aside from one DUI. Unfortunately, the DUI is in Massachusetts. That is a state, the only state in the country, where it's a misdemeanor, a first-time, one-time DUI, punishable by up to two and a half years in prison. And so the government applies 922 G1 to anyone who has at least one DUI in Massachusetts only. And I'm not expecting an answer to the complaint. I've not received any indication that they want to settle. Rather, I suppose that we're going to get some kind of motion to dismiss for failure to state a claim. It's going to be a great deal like the briefs that we're going to have. Is this one you have in Massachusetts now? That we've seen here today? I was a poor cab driver back then. So at some point, the government has to simply conceive the reality that as-applied challenges are available, the question is dangerousness. The severity of the crime is one issue. Length of time is another. The only analytical issue, I think, is the length of time since the conviction, if there's a question of rehabilitation. All right. So I think we understand. You're arguing for a very fact-based examination in the trial court, where the trial judges around the country are going to have to make findings of fact, and then tie those findings of fact into conclusions of law as to whether 922G1 is unconstitutional as applied to that particular individual, right? Correct. And that's what happened here. Correct, Your Honor. Okay. But Mr. Nemeroff says, wait a minute. That's not the right way to do an as-applied challenge. He says that, let's look at the right to vote, for example. I don't understand felons to have the opportunity to go into court to say, I know I committed a serious crime, and I spent four years in jail, but I got out 20 years ago, and now I want to vote. Do they have a right to put before the court that they're rehabilitated and good people, and now they have the right to vote? And if not, how is that different than the Second Amendment analysis? Perhaps they should. I mean, perhaps we should have a barden for voting. Whether we do or not is not a question that I can answer at the moment. I can tell you, Your Honor, that the concerns for disarmament are traditionally, as Barton explained, have always been about dangerousness. And so the concern in Barton is going to be about dangerousness. The concerns about voting might implicate more abstract concepts of civic virtue, and  how that's been treated. But every right is different, and it has different implications. The right to arms obviously has a public safety implications if it's going to be exercised by people who traditionally were conceived to be dangerous and thus excluded from it. But voting obviously would raise different concerns. In any event, what the government is telling us here, essentially, is that there is no, as-applied challenge available. They're kind of saying that, but they're also saying, no, we just define it differently. What's your best argument as to why the government's notion of what an as-applied challenge is, is wrong? Well, first of all, there are two responses to that. First of all, the concept of categorical exclusion is one that we would dispute. The right to keeping their arms, like other rights, like any right, is one that's defined by the Constitution, not by Congress. It simply cannot be that a sufficient number of legislatures or Congress could get together, condemn certain conduct as seriously criminal, a felony, impose a long jail sentence for it, and thereby categorically exclude people from a fundamental right. The right is something that people enjoy traditionally. They retain that. And it's not something that you could simply erase by simply having Congress declare it to be a felony or by having some state have a hypothetical penalty for, you know, five years for a parking meter violation. Nobody gets it. But as in the case of the Massachusetts DUI, it's enough to disarm everybody forever without any prospect of relief. That's not how constitutional rights function. The second argument that I would make, Your Honor, is that an as-applied challenge is a challenge that's based upon the individual person's facts, which the honors of exploring and questioning my colleague here, it does require looking into the underlying conviction, what this person does, his behavior in the community. What do we know about this individual to indicate whether or not traditional grounds for disarmament would apply, would have a constitutional fit as to this person? The analytical question I think this Court has to resolve, and maybe it'll do this in the Bindrup case, which we argued a while ago here, is how, I mean, the parties have this dispute about how we fit Barton with Marzarella. And is Barton— Marzarella is a facial challenge, right? Marzarella also included, I believe, an as-applied challenge as well. And there are apparently three ways we can do this. The first way is to simply say, as the district court did in Bindrup, that for this type of displace is Marzarella. The inquiry is a Barton inquiry, and we follow Barton to see what the result is. The second way we can do it— No, let me stop you there, because doesn't that make some sense insofar as Barton and this case involve a law that the Supreme Court specifically adverted to in the Heller opinion, and something to the effect that our decision today does not call into question longstanding prohibitions such as felons, right? Whereas the law at issue in Marzarella, an altered firearm, it didn't really have any historical providence. We don't have clear guidance from the Supreme Court in that area. And also, can't you reconcile Barton with Marzarella, a Marzarella value, reasoning that Barton supplied a necessary but not sufficient condition that a felon must meet in order to bring an as-applied challenge? To take Judge Harman's question first, we would agree that the Bindrup approach, where Barton is the analysis that controls and not Marzarella, is correct, and not just for the reasons you're on offer, but also because it's a more specific analysis. It's one that goes to this specific type of dispute and this type of provision. And Judge Ambrose, your question— My question to you is, can't you just reconcile Barton with Marzarella by reasoning that under Barton you need to supply a necessary—or Barton supplied, actually did supply a necessary but not sufficient condition that a felon must meet in order to bring an as-applied challenge under 922G? Well, the question I would have then is, if we're going to take that approach, does that mean that Barton effectively functions as step one or step two of Marzarella? We would submit that it could be either one. That is, we can say that Barton is effectively the second step of Marzarella. That is, that we know that 922G1 implicates Second Amendment rights, and now Barton is this Court's method of resolving that test. Why would we apply scrutiny here? I don't believe that you're— That's the second step of Marzarella, right? That's right. So here, isn't the question simply, we have, by what I think you would even concede, is a facially valid law? Correct. Okay, then the question becomes, in Mr. Suarez's case and other cases, does that presumptively lawful statute become unconstitutional in light of his or her particular or peculiar circumstances? Yes, that presumptively lawful statute is unconstitutional in light of his circumstances because what we're proving, if a person succeeds in qualifying himself or herself under Barton, then the person is essentially proving that he is a responsible, law-abiding citizen for whom there are no traditional grounds for disarmament. At that point— And the District Court needs to make findings of fact to that effect. And it did so in this case. And how would we review those? Clear error or abuse of discretion? I believe that those are factual findings that, in the normal sense, the Court might look at as to clear error in terms of the factual finding of dangerousness. Is this person dangerous? Was there sufficient basis for the Court to determine that? If we reach step two under Marzarella, I assume you're suggesting that— What scrutiny do you think applies? Immediate or strict? We don't believe any level of scrutiny should apply because we actually like— If you reach step two, that is, if you see Barton is essentially resolving step one, and now we go to step two, then the District Court's— In that situation, the District Court's decision was correct, as the judge below found, as Judge Caldwell found. No level of scrutiny is going to be satisfied by the government because we have somebody who is—for whom there are no traditional grounds for disqualification. And so it doesn't matter whether we use strict scrutiny. We would say it has to be strict scrutiny because you're talking about the basic Second Amendment rights of a law-abiding, responsible person. But even if you used intermediate scrutiny or something in between, it really wouldn't matter what level of scrutiny is because no matter what the government tries to do, once it fails to show that it has any interest in disarming the person, there's not going to be a good fit. And the District Court was correct in saying that Barton is the beginning and the end of that. Even if you see Barton, as the District Court saw Barton— If you apply intermediate scrutiny, don't, as applied challenges under intermediate scrutiny, don't you have to meet them categorically rather than by way of an individual? And what I'm doing is I'm analogizing at least to some First Amendment cases. Right. The Ehrlich case, the Edge case. And Ehrlich, of course, says we rejected the appellant's view that his as-applied challenge required the state to show that his particular conduct, in fact, trenched on the interests that the regulations sought to protect. We stated that in the general circumstances of the Appellant's Acts, the state had a strong interest in adopting and enforcing rules of conduct designed to protect the public. This having been established, the state was entitled to protect its interests by applying a prophylactic rule to those circumstances generally. We declined to require the state to go further and to prove that the state interests supporting the rule actually were advanced by applying the rule in Ehrlich's particular case. Well, if that were the test, Your Honor, then Barton would be effectively overruled. It would be a dead letter because, you know, if no matter what— No, you have to flip it around. In other words, does he have to be, in effect, does it have to be a category that would presumptively or be able to overcome the presumption? I mean, what you're suggesting is look at the individual. Each individual is on his own basis. This individual went 25 years without any other crime other than a DUI, I guess, whatever it was, in 08. 98, Your Honor. 98, I'm sorry. That the crime that actually happened in 1990, one could argue, was not violent. The person is led by, at least to some extent, an exemplary life. In other words, at least superficially, as far as we know, based on what you put in. And maybe that's a person that individually you take each person as he or she stands. But when you look to, at least in the First Amendment context, with cases like O'Reilly and like Edge, I'm having difficulty getting beyond, when you apply intermediate scrutiny, beyond a category to an individual. Your Honor, first of all, we would contend that intermediate scrutiny would never be the correct standard here because for the— Never, never, never? Not in Mr. Suarez's case, because Mr. Suarez here has shown that he's a responsible, law-abiding citizen who, and the statute unambiguously, there's no dispute that 1932G1 goes directly to the court of his Second Amendment rights to possess a handgun or a rifle or actually any firearm. So— I mean, you're asking us to go further than other courts to date have gone, have they not? No, I'm asking the court only to go as far as it went in Barton, which is to say that we look to see whether or not the individual essentially poses a risk of harm to society. And that's the test, because that's the as-applied test. If the state can come back and say, if the government can come back and say, well, that's very nice, but under this little scrutiny, our interest overrides all, essentially, as-applied circumstances, all individual circumstances, then Barton is a complete nullity.  What Barton gets you, at least in the dicta, is that while 922G is presumptively valid, by nature of calling it presumptively, there are exceptions, right? Sure. And you suggest that your client meets those exceptions in an as-applied challenge. He does. That, then what makes, if the level, maybe we don't get beyond step one, but if we get to step two, I would be, I can't figure out a way to get the strict scrutiny. Well, strict scrutiny, various courts have held that there is no- Because just what he just said, by way of dicta, can't, can't, that's not strict. Right. And to follow up on Judge Ambrose's point, I don't understand how the scrutiny analysis works when the task of the district judge, as I understand it, is to evaluate in great detail whether this man or woman, who is he or she, what's their body of work, what were they convicted of, and how have they behaved since they first got into trouble. And I don't understand how any of that maps onto an intermediate scrutiny or strict scrutiny analysis. I believe we're all saying the same thing, Ron. I would agree with that. Absolutely. Which is why we argued, essentially, the following. First, we believe that Barton does not call for these levels of scrutiny at all, because Barton itself is the analysis. Second, which is the Bindrup approach. All right, then tell us why this is only a Barton case and not a Marsrella case. You know, what's, what's the line of demarcation between when this Court of Appeals should rely on Barton, as you just suggested, as opposed to relying on Marsrella? Because I don't view those two decisions as intention, as intention with one another, but that's crystal clear, I don't think. I don't believe the two decisions are intentional with another either, for the same reason, for the same reason the Marsrella is not intentional with Heller. Heller, of course, had no levels of scrutiny. It had, it had no two-step. Well, then the Court hedged its bets and said, well, you know, if we were to apply scrutiny, it would be at least intermediate and maybe strict, right? Well, I think all the Court said was that we know, going back to Caroline Products, that, you know, we don't know it's not rational basis. Right, we know it's not rational basis. But I think, I think, you know, Heller basically told us something that we, I think, know with respect to all rights. That is, there are going to be laws that, I mean, there's more than one type of second challenge. First of all, some laws are simply categorically not compatible with the Second Amendment. That's Heller. Second, you have laws that, to the extent that they have a category question, like what's, what's an arm, that's similar to the First Amendment type of case or the Fourth Amendment type of case that would ask, is this speech, is this a search, is this a seizure? And that would supply the answer. So there's no really multiple steps there. And you also have the type of cases that do call for construction and the application of interest balancing. And that's the type of case that Marzarella might address, where most courts have gone by the two-step process. But look, look to see what the Fourth Circuit did next door with this type of thing. In the Fourth Circuit, they have what they call streamlined approach, right? In the Fourth Circuit, 922G has applied challenges. They say that their streamlined approach is essentially just step one. And while all the cases there have been for unsympathetic people, I believe it's the Moore case was the one that clarified U.S. versus Moore, the streamlined approach, that's a court that, just like the Suarez court below, the district court here, didn't go to any standard review. They didn't apply any level of scrutiny. They simply said, well, you know, if, you know, we look to see whether or not this person is within or without the prohibition. And that's what Barton is. So I don't, I would agree that there is no— Can we come back full circle to what you just said? Martin and Marzarella are not in tension. If they are in tension, then the earlier case would prevail over the later case. But one could make a very good argument they are not in tension. One dealt with a different set of facts, laid out some tests. Here, you suggest that, or the suggestion is, that there's a presumption that 922G is valid. That's right. And can be overcome in certain circumstances. And you're arguing that this is one of those circumstances. That's correct. And that's all the analysis that this circuit has announced is appropriate. Barton obviously came out after Marzarella, but that means, as I'm sure Judge Hardeman, I believe, was the author of that opinion, was aware of Marzarella. I believe it's cited in the opinion. And there is no tension between the two cases. Only three times. That's right. Which, you know, upon reviewing it recently, led me to conclude that they addressed different things, as Judge Amber just did. That is exactly right. In many ways, Barton was an easier case than Marzarella, because the Supreme Court adverted to felons and handguns, specifically in the Heller opinion. And that opinion, as long as it was, didn't talk at all about obliterated serial numbers. Right? That's right. Thank you very much. I believe we are all on the same page. That is, these are different cases. They have different tests for different types of situations. Here we have a Barton-type situation. And we followed the Barton roadmap. The district court did a good job of that as well. There are different ways to try to, you know, Bindrup and Suarez, the district courts took different approaches to reconciling the cases, but they all got to the same point. And the point is that these are different types of inquiries, and that we don't apply any intermediate scrutiny, strict scrutiny, any kind of balancing test, because it's simply not the type of inquiry we have. All right. Thank you. Thank you, Your Honors. We'll hear from Mr. Nemeroff. Thank you, Your Honors. Let me just start off where you just left off, which is in dealing with Barton and Marzarella. And certainly the cases are not in tension with each other. In fact, this court in the United States v. Hewitt recently applied the Marzarella framework in and as applied challenge to Section 922G1. And what the court recognized is that Barton addresses the first step, whether the individual has a Second Amendment right at issue. But then if the individual does have a Second Amendment right,  and it's not as if applying scrutiny to the law is somehow incompatible with as applied challenges, courts of appeals all over the country have been doing just that in dealing with Second Amendment challenges. The Ninth Circuit and Chauvin. Chauvin. Yeah. I mean, Chauvin definitely helps you, as does the Fourth Circuit's opinion in Staten, right? Right. So what's interesting to me is reading those, they pay lip service to doing an as applied challenge, and then they immediately go and say, well, domestic violence is a big problem. That doesn't sound like an as applied challenge. That sounds like a facial check. Well, I think the court's analysis in Chauvin is instructive, because what the court said was that Congress, of course, acted reasonably in instituting this lifetime ban. The plaintiff there hadn't brought forth evidence that after a certain number of years, individuals convicted of domestic violence could be trusted with firearms. And in the absence of that evidence, the plaintiff couldn't succeed in an as applied challenge. So what the court was saying was applying intermediate scrutiny, saying that Congress's law has to be reasonably related to its interests. And the plaintiff had the burden there of showing, well, look, here's this population of individuals as to whom it would be unreasonable to apply 922 G9. And the plaintiff couldn't do that. And that's enough to say, you know, let's use domestic violence. So it would be enough for the plaintiff to say, I've become a contemplative monk. So domestic violence is no longer a concern. I'm now part of the group of people, namely contemplative monks, who can have firearms. Is that? Well, I think it would depend somewhat on the facts. Because remember, you know, you want to have it both ways. Because you said he has to be part of a group of people. I tried to think of a group of people that wouldn't be able to beat their lives. And I envision, you know, monks living in a castle on a hill somewhere by themselves in cells, individual cells. So isn't doesn't that guy, by proving he's a contemplative monk, isn't he at zero risk of domestic violence? Well, I do think the prohibition on possessing firearms is not just to address domestic violence. It's because this individual isn't trustworthy with a firearm. But just to get to, I think your question points to, what is the court's analysis going to be? And it is true that every court of appeal, to get to the second step of a Second Amendment analysis, has applied intermediate scrutiny. The Sixth Circuit, there was a panel that applied strict scrutiny. That opinion has been vacated. And the case is being heard en banc. And under intermediate scrutiny, the law has to be reasonably related. And my opinion counsel brought up- It has to be not really, but reasonably related. That's rational basis. It has to be an important government purpose. And there has to be a ends means fit. That's right. And what the court said in Marjoriella was that it had to be reasonable. And what the Fourth Circuit, my opinion counsel brought up the Fourth Circuit has applied case law. What it said there is the prohibitor, the net may be somewhat over inclusive. The court is not required to speculate on a case-by-case what by and acts may have unfolded absent application of the statute. That's in Chapman. And in my- Which case was that? The first one was Chapman. And from what court? The Fourth Circuit. And the second one was also the Fourth Circuit. Staton said the same thing, right? We recognize the net cast by 922 G9 may be somewhat over inclusive. That's right. And- Given that every- Well, that sounds incompatible with an as-applied challenge. I don't know. I don't think so, Your Honor, because a facial challenge, remember, is to look and see if the statute is constitutional in any application. As long as it's constitutional in some application, then it's upheld. In an as-applied challenge, the court is looking at a more narrow range, but the court is still evaluating- Maybe I just missed something from the comment we were having with Judge Hartman. But isn't the point that 922 G may be over inclusive? And there are some people that it should not apply to. They can break the presumption against validity. That's right. But what the court is doing in determining whether it's over inclusive is evaluating Congress's judgment and drawing the line. And the court can then draw, if it can draw a principled line somewhere else, then that's what it would do in an as-applied challenge. But it still has to do it in a principled way. And keep in mind what the plaintiff is asking for here. But it's doing it as to a group of people, without regard to the individual characteristics of that person. Well, of course, individual's characteristics would determine whether that individual fell within that group. Right, right. But that's the rub. You want us to define an as-applied challenge by virtue of one's membership in a group, irrespective of how they behave, right? And that's why, again, so contemplative monks should be part of the group of domestic violence misdemeanors who are not prohibited from having a firearm later, once they get divorced and become contemplative monks. Because there's no risk that they can commit violence against their wife, right? Well, my caveat there is that I think that the law isn't just intended to prohibit violence,  It's intended to prohibit misuse of firearms. We're not talking about this law. I'm talking about the domestic violence program. And I think that law also is geared towards preventing misuse of firearms. I don't know. You're a moving target. Maybe that means you're doing a great job. But I'm finding it difficult to conceive of any person under any one of Section 922G subsections that you would agree can bring a successful as-applied challenge. And that's consistent with what I read in your brief. Because when I read your brief, I thought to myself four or five times, oh, they're paying lip service to the notion of an as-applied challenge, but they're really giving no quarter to the as-applied challenge. Your monk example may be a good example. But remember, the reason we're focused on these groups is because we are applying intermediate scrutiny. And to focus on the individual in the way the plaintiff wants the court to do is to apply strict scrutiny and say that Congress can't be even the slightest bit over-inclusive in the way the law is written. But a number of courts have rejected that. And in Heller, the Supreme Court stated that the law is presumptively constitutional. So to apply strict scrutiny in the way that the plaintiff wants the court to do is to say that the law is presumptively unconstitutional. Well, he doesn't want means-end scrutiny. Right. He says just-applied barring. But he says, I don't think Mr. Gurr would agree that the contemplative monk wins because I think Mr. Gurr would say, wait a minute, what if evidence is marshaled that the contemplative monk ran to the hills so he could plan his wife's assassination? And if you put on evidence that the guy's hiding out in the castle, you know, concocting his plan to go back and find his ex-wife and kill her, that guy shouldn't win. He shouldn't get a firearm, right? So the fact that he's a member of the group doesn't suffice. And what really suffices or doesn't is the man's individual circumstances. Who is this person? But you don't want the district courts to evaluate who the individual is. You want them to evaluate whether the individual is a member of a group that can't be trusted with guns. Is that a fair statement? I think what the court should evaluate is how Congress wrote the statute, whether Congress should have written the statute differently. I didn't understand that. Would you say that again? What the court should be evaluating is how Congress wrote the statute and whether Congress should have written the statute differently. And I think the court's hypothetical puts a finger on the problem. Would you have written the statute differently? Sorry? Would you have written the statute differently? My position here is to defend the statute as written, Your Honor. And I certainly think the statute, uh, this court has already upheld it in both facial and as applied challenges. And I think it should upheld it here against this as the purpose of 922 G is what to not have guns with those who might commit violent offenses. I think that's too narrow, Your Honor. The purpose of 922 G is to protect against injury due to firearms by keeping firearms out of individuals who aren't trustworthy with them. So while an individual who commits a violent crime, of course, that's a significant risk, but someone who leaves their firearm out on their coffee table where their kid can get it is also a significant risk. So there are broader interests implicated. That's why the right to bear arms has been viewed as a civic right, like the right to bear arms. I thought that in Barton, let me see if I can find it. Page 173. The debates that were from various states that were considered at the time that the Second Amendment, which I guess at that point was probably the Fourth Amendment that was being considered, also confirmed, the first two amendments not being passed, also confirmed that the common law right to keep and bear arms did not extend to those who are likely to commit violent offenses. And I had thought that 922 G is a carrier, you know, it implements that concept. Well, for example, part of 922 G prohibits firearms from minors, minors from possessing firearms. I don't think the concern there is that minors are more likely to commit a violent crime. But in this context, what's the purpose of 922 G? It's to keep firearms out of the hands of people who are untrustworthy to possess firearms. OK, let's accept just what you just said. Mr. Suarez didn't use the gun. He just happened to have it without a license in 1990. Since then, he's only had one DUI in 1998, nothing to do with a firearm. And there's other evidence, you know, father, marriage, elder in a church, etc. Maybe there should be more, who knows? But is there anything that indicates that this is the type of person that should not be at least allowed the opportunity to present evidence that he should now be allowed to carry a firearm? Well, yes, your honor, he was convicted of a serious crime, as judged by Maryland's legislature and a number of other legislatures. As your honor pointed out, it was a firearm crime. It was. We spent several minutes at the outset of this about an hour ago of saying that it may not appear to have been violent at all in 1990. And he hasn't done anything since then. In other words, you're basically saying he doesn't have the right to rehabilitate himself at all. I really come back to where Judge Hardiman was at the beginning. It almost sounds like you're saying there isn't, as to him, an as-applied challenge. Because he's a member of a bad group. That group is categorically prohibited. In Heller, the Supreme Court said the law is presumptively constitutional. If we go back and look at Chauvin, what the court there said is Congress permissibly enacted a lifetime ban for individuals convicted of these significant crimes. Now, there is an opportunity, if your state expunges your crime and restores your civil rights, you can have your firearm rights restored for purposes of federal law also. But Congress did enact this lifetime ban. Didn't Pennsylvania give him permission? Pennsylvania, first of all, he was convicted under Maryland law. Right, but now he lives in Pennsylvania. In addition to getting some kind of government security clearance, he petitioned the state court of Pennsylvania and they granted his petition. Well, I think that the 921 is tied to what Maryland does. But even with respect to Pennsylvania, Pennsylvania didn't restore his right to serve on the jury. And it's reasonable for Congress to say... But wait, we're talking about his... He doesn't come to this court or the district court asking to serve on a jury. No, Your Honor, but... Didn't the Pennsylvania state court rehabilitate him in respect to his wish regarding firearms? I don't think this court or any other court... That is a yes or no question. Yes, Your Honor, but... It did. Okay, then what are we to make of that? Nothing? Do we ignore that? Do we give that any weight? Should the district court have given that any weight? Well, what Congress has said is that if Pennsylvania won't trust this individual to serve on a jury, then it's not going to trust the individual to possess firearms. And that is a reasonable judgment. And this court has not indicated, nor has any other court indicated, that if a state restores federal firearms, then 922G1 is unconstitutional. Well, if somebody wants to serve on a jury and they want to bring a case, that's the next case. Right now, we're dealing with whether this person has a right to at least the opportunity to show that the presumption of 922G should not exist with respect to him. That's right, Your Honor. And what we would say is that you should look to the crime he was convicted to. The inquiry that the plaintiff has proposed is precisely the inquiry that this court held in Ponerelli was not something courts are equipped to do. It's not something that has any historical basis. And we don't think it's the appropriate analysis under Second Amendment challenges. Thank you very much, both of you, for very well presented arguments.  Have a transcript. Prepare to dissolve arguments. Split the cost. And again, thank you very much for coming before us today. Good job.